IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
OMAHA DIVISION

| | |
|---|---|
| HOUSTON McKELL, III, individually, ) | CASE NO. CI: 17-CV-00448 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **COMPLAINT AND JURY DEMAND** |
| ALEGENT HEALTH - BERGAN ) | |
| MERCY HEALTH SYSTEM, a non- ) | |
| profit domestic ) | |
| corporation, ) | |
| ) | |
| Defendant. ) | |

COMES NOW Plaintiff, Houston McKell, III, by and through his attorneys, and for his cause of action against the Defendant, Alegent Health - Bergan Mercy Health System, alleges and states as follows:

### JURISDICTION AND VENUE

1. This is a civil action for damages brought pursuant to the Emergency Medical Treatment and Active Labor Act (EMTALA) 42 U.S.C.A. §1395dd.

2. Jurisdiction is in this federal district court as the federal courts may exercise federal question jurisdiction over an EMTALA claim.

3. Venue is in this District pursuant to 28 U.S.C.A. §1391 because the events giving rise to Plaintiff's claims occurred in Omaha, Douglas County, Nebraska.

4. This action is timely brought within the two-year limitation period after the November 20, 2015, violation pursuant to 42 U.S.C.A. §1395dd(d)(2)(C).

### PARTIES

5. Houston McKell, III ("Plaintiff"), is an unmarried man living in Omaha, Nebraska.

6. Alegent Health – Bergan Mercy Health System ("Bergan Mercy") is a non-profit hospital which provides hospital and emergency department services to the public in Omaha, Nebraska.

7. Bergan Mercy is a participating hospital as defined by 42 U.S.C.A. §1395dd(e)(2) and is subject to the provisions of the Emergency Medical Treatment and Active Labor Act (EMTALA) 42 U.S.C.A. §1395dd and 42 C.F.R. §489.24(b).

## FACTUAL ALLEGATIONS

8. Prior to November 13, 2015, Plaintiff was a kidney transplant recipient.

9. On November 13, 2015, Plaintiff undergoes removal of the donor kidney at The Nebraska Medical Center ("NMC"). A Jackson Pratt ("JP") drain is placed.

10. Plaintiff remains hospitalized at NMC from November 13, 2015, through November 16, 2015.

11. On November 14, 2015, the JP drain output is 115 ml.

12. On November 15, 2015, the JP drain output is 169 ml.

13. On November 16, 2015, the JP drain output is 270 ml. Alexander Maskin, M.D., and his resident, Shaheed Merani, M.D., write an order to pull the drain and discharge Plaintiff to home. Nurse Kim Boehm pulls the JP drain and the IV prior to sending Plaintiff home.

14. At 1:23 p.m., on November 20, 2015, Plaintiff goes to Bergan Mercy and reports increasing pain and swelling in the right lower quadrant incision site. He states that he hit the surgical site area against a wall on the evening of November 19, 2015. Plaintiff reports that "a lot of fluid came out from within the wound." Thomas R. Hubbert, PA-C, reports that he contacted UNMC Physicians surgeon, "Dr. Hoffman"

who requests Plaintiff be seen at NMC's emergency department. PA Hubbert spoke with NMC Physician, Phillip Jones, M.D., who agreed to accept Plaintiff in the NMC.

15. At 9:48 p.m., on November 20, 2015, Bergan Mercy employee, John D. Vornbrock, R.N., contacts Plaintiff to inquire as to why Plaintiff did not go to NMC. Plaintiff reports that while in route, his vehicle broke down and had to be towed, and he went home. Plaintiff reports he will try to arrange transportation, but is unsure how long it may take.

16. At approximately 1:30 a.m., on November 22, 2015, Plaintiff calls 911 to report that his intestines had fallen out of his incision. At 1:56 a.m., Plaintiff arrives at NMC.

17. At approximately 4:00 a.m., on November 22, 2015, Plaintiff undergoes surgery to place his intestines back into his abdomen.

18. On November 25, 2015, Plaintiff is discharged home.

## EMTALA VIOLATION

19. Plaintiff incorporates paragraphs 1 to 18 of the Complaint as if set forth fully herein.

20. Pursuant to 42 U.S.C.A. §1395dd(a), there is a medical screening requirement for participating hospitals: "In the case of a hospital that has a hospital emergency department, if any individual comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition exists."

21. Pursuant to 42 U.S.C.A. §1395dd(b)(1), there are requirements that a patient be adequately stabilized and transferred if appropriate: "If any individual comes to a

hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer to another medical facility."

22. Pursuant to 42 U.S.C.A. §1395dd(b)(3), there are requirements that, if a patient refuses to consent to transfer, participating hospitals must: "[inform] the individual of the risks and benefits to the individual of such transfer . . . The hospital shall take all reasonable steps to secure the individual's written informed consent to such transfer."

23. Pursuant to 42 U.S.C.A. §1395(d)(2)(A), Plaintiff may in a civil action against the participating Hospital obtain damages available for personal injury under the law of the State in which the Hospital is located, and such equitable relief as is appropriate.

## ALLEGATIONS

24. Bergan Mercy violated 42 U.S.C.A. §1395dd, because in violation of 42, U.S.C.A. §1395dd:

    A. (a) Plaintiff requested Bergan Mercy examine and treat his post-surgical condition and Bergan Mercy failed to complete appropriate medical screening and work-up within its capacity to determine the existence of Plaintiff's emergency medical condition;

    B. (b)(1)(A) Bergan Mercy failed to adequately screen Plaintiff for his emergent post-surgical complication and thus failed to stabilize Plaintiff prior to the contemplation of transferring Plaintiff;

  C. (b)(1)(B) Bergan Mercy failed to arrange for the safe transfer of Plaintiff to NMC where his treating physicians practice; and,

  D. (b)(3) even in the event Bergan Mercy offered Plaintiff transfer to NMC by ambulance, Bergan Mercy failed to document that its employee agents informed Plaintiff of the seriousness of his condition, and did not document its employee agents attempted to obtain Plaintiff's written informed consent of such alleged refusal to transfer.

25. Bergan Mercy is a participating Hospital under 42 U.S.C.A. §1395(d)(2)(A), and Plaintiff may obtain damages available for personal injury under the law of Nebraska, in which Bergan Mercy is located, where equitable relief is appropriate.

26. Bergan Mercy failed to provide Plaintiff with an appropriate medical screening examination. Without an appropriate screening examination, Bergan Mercy failed to determine the extent of Plaintiff's medical condition. Without determining the extent of Plaintiff's medical condition, Bergan Mercy failed to meet its obligations under EMTALA, in the following ways:

  A. By failing to provide a level of screening examination reasonably needed to uniformly identify critical conditions that may be afflicting symptomatic patients who present with substantially similar conditions;

  B. By failing to conduct a complete medical screening examination upon notification that Plaintiff's incision was leaking fluid and was at risk for dehiscence and evisceration;

  C. By improperly discharging Plaintiff when he had evidence of an evolving post-surgical complication that placed the integrity of Plaintiff's incision at risk for dehiscence and evisceration;

D. By failing to adhere to Bergan Mercy's own standard policies, procedures, protocols, care paths, and/or critical pathways for patients entering the emergency department under similar medical circumstances; and,

E. By otherwise departing from obligations imposed upon Bergan Mercy under EMTALA and Bergan Mercy's own operating standards.

27. Bergan Mercy perceived Plaintiff as suffering from an emergency medical condition which required emergency transport of Plaintiff to NMC.

28. Bergan Mercy failed to inform Plaintiff of the risks associated with his post-operative condition. Bergan Mercy chose not to provide appropriate transportation and instead allowed Plaintiff to leave Bergan Mercy without communicating what risks were associated with his post-operative condition. As a result, Plaintiff attempted to drive himself to The Nebraska Medical Center. Before he arrived at The Nebraska Medical Center, his automobile broke down en route to NMC.

29. Bergan Mercy employees chose not to treat Plaintiff and chose not to transport Plaintiff to NMC via ambulance to rule out an evolving abdominal incision complication.

30. Plaintiff suffered from an emergency condition such that the absence of immediate medical attention could reasonably be expected to result in placing the health of Plaintiff in jeopardy.

31. Bergan Mercy employee, John Vornbrock, R.N., knew of the existence of this specific emergency medical condition at the time Plaintiff was discharged on November 20, 2015. Nurse Vornbrock documented his concern after Plaintiff did not make it to the NMC ED.

32. Emergency transport of a patient, such as Plaintiff, was a requisite element to complete the medical screening and work-up of Plaintiff's evolving post-operative complication.

33. Bergan Mercy's failure to provide appropriate transportation resulted in an insufficient screening and work-up, which had a disparate impact on Plaintiff.

34. Had Plaintiff been appropriately screened, stabilized and transportation arranged, more likely than not, Plaintiff would not have gone on to eviscerate on November 22, 2015.

## DAMAGES

35. As a proximate result of Bergan Mercy's failure to provide an appropriate medical screening on November 20, 2015, his emergency medical condition deteriorated. On November 22, 2015, Plaintiff's incision opened and his bowel contents fell out.

36. As a proximate result of Bergan Mercy's failure to transfer Plaintiff within the standard of care, Plaintiff's emergency medical condition progressed after his discharge which resulted in dehiscence of the abdominal wound and evisceration of Plaintiff's intestines.

37. As a proximate result of Bergan Mercy's failure to transfer Plaintiff to NMC on November 20, 2015, Plaintiff suffered the following injuries:

    A.  Bowel evisceration;

    B.  Adhesions;

    C.  Scarring;

    D.  Permanent disability;

    E.  Past hospital and medical expenses;

    F.  Future medical expenses;

G.  Permanent loss of earning capacity;

H.  Past physical pain and mental suffering; and,

I.  Future physical pain and mental suffering.

WHEREFORE, Plaintiff Houston McKell, III, demands judgment against the Defendant Alegent Health – Bergan Mercy Health System for monetary damages in accordance with the provisions of 42 U.S.C.A. §1395dd(2)(A), and applicable state laws for her general damages and for her taxable costs and expenses incurred herein.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in Omaha, Nebraska, on all issues in this matter so triable.

DATED this 20th day of November, 2017.

>
> HOUSTON McKELL, III,
> Plaintiff,
>
> By: _____
> John F. Carroll, #23811
> WATSON & CARROLL, PC, LLO
> 160 Centre Place
> 2809 South 160th Street, Suite 309
> Omaha NE  68130-1755
> Office: 402.991.2100
> Fax:    402.991.2110
> john@watsoncarroll.com
> ATTORNEY FOR PLAINTIFF